Points Decided.

(March 3, 1923.)

A. M. NEWTON, Plaintiff and Petitioner, v. THE STATE BOARD OF LAND COMMISSIONERS OF THE STATE OF IDAHO, and C. C. MOORE, Governor and Chairman; A. H. CONNER, Attorney General; E. G. GALLET, State Auditor; F. A. JETER, Secretary of State; and ELIZABETH RUSSUM, Superintendent of Public Instruction, as Members of the State Board of Land Commissioners of the State of Idaho, Defendants.

[219 Pac. 1053.]

IDAHO ADMISSION BILL—EFFECT WHICH IT GIVES TO STATE CONSTI-TUTION—SCHOOL LAND GRANTS—WHEN ABSOLUTE TITLE VESTS IN STATE—HOW SUCH LANDS MAY BE DISPOSED OF—POWER OF STATE BOARD OF LAND COMMISSIONERS.

1. Where Congress admits a state into the Union under a constitution which its people have adopted, the provisions of such constitution, in so far as they contain any compacts between the state and the government, are invested with all the authority conferred by any act of Congress.

2. By sec. 4 of the Idaho Admission Bill, approved July 3, 1890 (26 Stat. L. 215; Idaho Comp. Stats., pp. 2655–2659), Congress granted to the state of Idaho for the support of common schools an absolute and indefeasible title to surveyed sections numbered 16 and 36 in every township of said state, where such sections or any part thereof had not been sold or otherwise disposed of by authority of any act of Congress, prior to the admission of the state into the Union.

3. These grants to the state also included unsurveyed sections 16 and 36 in every township, to which absolute and indefeasible title attached immediately upon the government survey of the same.

4. Sec. 5 of the Idaho Admission Bill requires that all lands granted to the state for educational purposes shall be disposed of only at public sale, the proceeds to constitute a permanent school fund, the interest of which only shall be expended in the support of said schools. Sec. 8 of art. 9 of the constitution, approved by the Admission Bill, provides that these lands shall be disposed of in a manner that will secure the maximum amount to the state, no lands to be sold for less than ten dollars per acre.

5. While the location, selection, direction, management, control, sale, rental or disposition of the state's lands is given to the state board of land commissioners, the power to finally dispose of granted lands, where title is completely vested in the state, is limited to such manner and upon such terms as are imposed by the grant and the constitution.

6. Secs. 4 and 5 of the Idaho Admission Bill, together with the acceptance by Congress of the constitutional provisions regu· lating the manner of locating granted lands and the disposition thereof, constitute a pact between the government and the state, which neither may abrogate or modify without the consent of the other party to the pact.

7. Secs. 2275 and 2276 of the Revised Statutes of the United States, as amended by the act of Feb. 28, 1891, providing that a state may surrender its title to sections 16 and 36 to the government, where the same are within a military, Indian or other reservation, and select lieu lands therefor by relinquishing its title to said school lands, are permissive and not mandatory.

8. Sec. 5 of the Idaho Admission Bill, which provides that "all lands herein granted for educational purposes shall be disposed of only at public sale," and sec. 8, art. 9 of the constitution, which provides that "no school lands shall be sold for less than ten dollars per acre," are mandatory and prohibitive, and the state board of land commissioners is without authority to effect an exchange of state school lands after the same have been surveyed for other lands with the government of the United States.

Original application for Writ of Prohibition. *Writ granted.*

Peterson & Coffin, for Plaintiff.

The language of the Idaho Admission Act implies a grant *in praesenti*. The grantee was in existence at the time of the passage of the act and the lands were identified with definiteness and certainty. (*Northern Pac. R. Co. v. Hussey,* 61 Fed. 231, 9 C. C. A. 463; *Northern Pac. R. Co. v. Myer,* 172 U. S. 589, 19 Sup. Ct. 276, 43 L. ed. 564; *Central Pac. R. Co. v. Nevada,* 162 U. S. 512, 16 Sup. Ct. 885, 40 L. ed. 1057; *Balderston v. Brady,* 17 Ida. 567, 107 Pac. 493.)

Whatever authority is herein cited in favor of the view that a grant of unsurveyed land is a present grant is applicable with double force to the case of surveyed lands.

(*Beecher v. David Wethereby,* 95 U. S. 517, 24 L. ed. 440; *Rice v. Minn. & N. E. R. R. Co.,* 1 Black, 358, 17 L. ed. 147.)

We believe it to be in the interest of sound public policy that the state land board shall not be permitted to exchange surveyed school sections for any other lands whatsoever, no matter what profit the state may derive from the transaction. Sec. 8, art. 9 of the constitution, clearly indicates the fixed and established policy of the state that the state should not divest itself of title to its school sections except at public auction at not less than ten dollars per acre.

A. H. Conner, Attorney General, and Herbert Wing, Asst. Atty. General, for Defendants.

The defendants assert that they and their predecessors in office, acting as the state board of land commissioners, are and have been proceeding in the matter complained of here, in strict accord with the state constitution and the state and federal legislation germane to the question here raised. (Secs. 4 and 5 of 26 Stat. L., Sess. 1, 215, chap. 656, commonly known as the Idaho Admission Bill; secs. 7 and 8 of art. 9 of the State Constitution; secs. 2896, 2899, C. S.; secs. 2275 and 2276, U. S. Rev. Stats., as amended by Act Feb. 28, 1891 (26 Stat. L. 796); *Rogers v. Hawley,* 19 Ida. 751, 115 Pac. 687; *California v. Deseret Water etc. Co.,* 243 U. S. 415, 37 Sup. Ct. 394, 61 L. ed. 821.)

WILLIAM A. LEE, J.—This is an original action commenced in this court by a citizen and taxpayer of the state, praying for a writ of prohibition against the state board of land commissioners to prohibit a proposed exchange of state lands granted by the United States to the state for educational purposes, for other government lands. The petition alleges that the individual defendants and their predecessors in office, constituting said board, have entered into negotiations with the Forestry Bureau of the Department of Agriculture of the United States, for the purpose of trading certain surveyed school sections 16 and 36, located in vari-

ous forest reserves in the state, for a compact body of land located in the Cache National Forest, District No. 10, of a like area of approximately 70,000 acres, in townships six, seven, eight and nine south, ranges thirty-six and thirty-seven east, Boise meridian, Bannock county, Idaho, and that said defendants are attempting to relinquish the title of the state to said surveyed school sections 16 and 36 in exchange for said forest reserve lands. Petitioner also alleges that said proposed relinquishment and exchange of surveyed school sections 16 and 36 is in violation of sections 4 and 5 of the Idaho Admission Bill (26 Stats. L. 215), found in the Idaho Compiled Statutes at page 2655, and also of section 8, article 9 of the constitution of the state.

An alternative writ was issued, and upon a return thereof, defendants filed a general demurrer thereto, and the cause presents to this court for final determination the issues of law thus tendered by the petition and demurrer thereto, the single question being: Has the state board of land commissioners authority to relinquish surveyed sections 16 and 36, granted by the United States to the state by the Idaho Admission Bill for school purposes, for other unappropriated surveyed government lands?

Sections 4 and 5 of said Idaho Admission Bill read:

"Sec. 4. That sections numbered 16 and 36 in every township of said State, and where such sections or any parts thereof, have been sold or otherwise disposed of by or under the authority of any Act of Congress, other lands equivalent thereto, in legal subdivisions of not less than one quarter section, and as contiguous as may be to the section in lieu of which the same is taken, are hereby granted to said State for the support of common schools, such indemnity lands to be selected within said State in such manner as the Legislature may provide, with the approval of the Secretary of the Interior.

"Sec. 5. That all lands herein granted for educational purposes shall be disposed of only at public sale, the proceeds to constitute a permanent school fund, the interest of which only shall be expended in the support of said schools.

But said lands may, under such regulations as the Legislature shall prescribe, be leased for periods of not more than five years, and such lands shall not be subject to preemption, homestead entry, or any other entry under the land laws of the United States, whether surveyed or unsurveyed, but shall be reserved for school purposes only."

Section 8 of article 9 of the constitution is as follows:

"Sec. 8. *Location and disposition of public lands.* It shall be the duty of the state board of land commissioners to provide for the location, protection, sale or rental of all the lands heretofore, or which may hereafter be granted to the state by the general government, under such regulations as may be prescribed by law, and in such manner as will secure the maximum possible amount therefor: Provided, that no school lands shall be sold for less than ten dollars per acre. No law shall ever be passed by the legislature granting any privileges to persons who may have settled upon any such public lands, subsequent to the survey thereof by the general government, by which the amount to be derived by the sale, or other disposition of said lands, shall be diminished, directly or indirectly. The legislature shall, at the earliest practicable period, provide by law that the general grants of land made by Congress to the state shall be judiciously located and carefully preserved and held in trust, subject to disposal at public auction for the use and benefit of the respective objects for which said grants of land were made, and the legislature shall provide for the sale of said lands from time to time and for the sale of timber on all state lands and for the faithful application of the proceeds thereof in accordance with the terms of said grants: Provided, that not to exceed one hundred sections of school lands shall be sold in any one year, and to be sold in subdivisions of not to exceed three hundred and twenty acres of land to any one individual, company or corporation."

This section of the constitution, as it was originally adopted, limited the sale of these lands to twenty-five sections in any one year, and required such land to be sold in

subdivisions of not more than one hundred sixty acres to any one individual, company or corporation. By the amendment effective December 1, 1916 (L. 1917, p. 528), this section was amended to read as above.

The preamble of the Admission Bill reads:

"Be it enacted by the Senate and House of Representatives of the United States of America, in Congress assembled. That the State of Idaho is hereby declared to be a state of the United States of America, and is hereby declared admitted into the Union on an equal footing with the original States in all respects whatever; and that the Constitution which the people of Idaho have formed for themselves be, and the same is hereby, accepted, ratified and confirmed."

The Idaho Admission Bill, containing the land grants by the government to the state found in sections 4 and 5 above quoted, together with the acceptance by the Congress of the provisions of the constitution regulating the manner of locating such lands and the disposition thereof, constitute a compact between the government and the state, which neither may abrogate or modify without the consent of the other party to the pact. It is hardly conceivable that the government would attempt to abrogate or modify the terms of this agreement without the consent of the state, and unless such provisions conflicted with the federal constitution, the state could not do so without the consent of the United States.

It has been held that where Congress admits a state into the Union under a constitution which the people have formed, the provisions of such constitution are invested with all the authority conferred by any act of Congress. (*McCornick v. Telegraph Co.*, 79 Fed. 449, 25 C. C. A. 35, 38 L. R. A. 684; *Farm Investment Co. v. Carpenter*, 9 Wyo. 110, 87 Am. St. 918, 61 Pac. 258, 50 L. R. A. 747; *Short v. Praisewater*, 35 Ida. 691, 208 Pac. 844.)

Controversies which have arisen over the character and extent of the title which a state takes to sections 16 and 36 when unsurveyed, under grants similar to that in the Idaho

Admission Bill, have given rise to many decisions by the courts, departmental decisions, and polemic discussions by eminent members of the bar, that would fill volumes, and are too numerous to be even briefly reviewed. They are not of controlling importance, since the question here presented relates only to surveyed school sections 16 and 36.

In *Balderston v. Brady*, 17 Ida. 567, 107 Pac. 493, in an exhaustive and able opinion by Ailshie, J., this court held that the grant contained in section 4 of the Admission Bill by its terms was clearly a grant *in praesenti,* and included unsurveyed as well as surveyed lands; that the indemnity clause found in section 5, providing that where such sections or any part thereof had been sold or otherwise disposed of by or under the authority of any act of Congress, indemnity lands might be selected, had reference to lands sold or disposed of at the time of the passage of the Admission Bill, which was July 3, 1890, because this act provided that such lands should not thereafter be subject to pre-emption, homestead entry or any other entry under the land laws of the United States, *whether surveyed or unsurveyed,* but should be reserved for school purposes only.

It is also said in this case: "The State Board of Land Commissioners has no power or authority conferred upon it, either by the constitution or statute of this state, to relinquish the state's right or title to sections 16 and 36, granted by the general government for common-school purposes, and any action taken by the board, or under its authority, attempting to relinquish or waive the state's right to such lands, is void."

This holding is based upon the language of section 5 of said Admission Bill: "That all lands herein granted for educational purposes shall be disposed of only at public sale, etc.," and section 8 of article 9 of the constitution above referred to, which prohibits any of said school lands being sold for less than ten dollars per acre.

In *Balderston v. Brady,* 18 Ida. 238, 108 Pac. 742, on motion to modify the former opinion for the alleged reason that it was being claimed that this holding prevented the

board from taking title to lands in lieu of sections 16 and 36, the court said: ''The question the court was dealing with was not the power of the board to *acquire* title to lands for the use of the state, but rather the board's power of *disposition* of state lands.''

*Rogers v. Hawley,* 19 Ida. 751, 115 Pac. 687, was an original action in this court for a writ of prohibition to restrain the state land board from relinquishing or attempting to relinquish the state's right to a certain unsurveyed section 36, which the board was seeking to relinquish for indemnity lands. In the state's brief, the attorney general took the position that as applied to unsurveyed sections, the grant contained in section 4 of the Admission Bill passed only a floating or equitable title, citing in support of such contention, *Nelson v. Northern Pac. Ry. Co.,* 188 U. S. 108, 23 Sup. Ct. 302, 47 L. ed. 406, and *Heydenfeldt v. Daney G. & S. Mining Co.,* 93 U. S. 634, 23 L. ed. 995, and further that the real intention of Congress by the Admission Bill was to grant to the state *in praesenti* a quantity of land equal in amount to the sixteenth and thirty-sixth sections, to take effect when the status of the land was fixed by survey and such sections were capable of identification. The opinion of the court discusses the effect of Senate Bill No. 47, approved February 8, 1911, Laws 1911, page 16, now C. S., secs. 2898–2901, which authorizes the land board to relinquish to the government unsurveyed school sections in exchange for surveyed, unreserved and unappropriated public lands within the limits of the state, equivalent thereto in area and value, in legal subdivisions, and as contiguous as may be to the section in lieu of which the same is taken. The court held that such relinquishment is not in contemplation of section 8 of article 9 of the constitution, which would subject the exchange with the government to the constitutional limitation that the land must be sold for not less than ten dollars per acre and that a sale or disposal of land must be at public auction, ''. . . . for the reason that the case does not involve a mere naked relinquishment of the state's right and

37 Idaho.—5

interest, but it rather involves an exchange of unsurveyed, unidentified school sections for 'lands equivalent in area and value' to the sections in lieu of which the surveyed lands are taken," to which it could obtain immediate possession, and further that section 2 of Senate Bill No. 133, Laws 1911, page 85, now C. S., sec. 2901, is not in conflict with section 7 of article 9 of the constitution.

It is difficult to reconcile some of the holdings in this case with what was said in *Balderston v. Brady, supra.* The subsequent legislation referred to does not afford sufficient reason why the construction given to section 8 of article 9 of the constitution and sections 4 and 5 of the Admission Bill should be modified. However this may be, the sole question in *Rogers v. Hawley* with regard to the power of the state land board to relinquish title to any of the state school lands was limited to unsurveyed lands, to which title had not vested in the state according to what appears to be the holding of the federal supreme court in construing grants similar to that contained in the Idaho Admission Bill. Hence the Rogers-Hawley case cannot be regarded as decisive of the question here involved, which pertains solely to the right of the state land board to exchange surveyed sections 16 and 36, where by all authority, including state and federal decisions and the rulings of the Land Department, it is conceded that title fully vests in the state under the grant as soon as the land is surveyed so that it may be identified.

Defendants assert in the instant case that they and their predecessors in office, acting as the state board of land commissioners, are and have been proceeding in the matter complained of in strict accord with the state constitution and federal legislation germane to the question presented, and particularly rely upon sections 2275 and 2276 of the Revised Statutes of the United States, as amended in 1891 (U. S. Comp. Stats. Ann., secs. 4860 and 4861), and the construction that has been given to these federal statutes by the United States supreme court in *California v. Deseret Water Oil & Irr. Co.,* 243 U. S. 415, 37 Sup. Ct. 394, 61 L. ed. 821.

This was an action in error from the state to the federal supreme court, being originally entitled *Deseret Water, Oil & Irr. Co. v. State,* 167 Cal. 147, 138 Pac. 981, wherein the state court held that:

"The land is a 16th section, title to which passed to the state by virtue of the federal school land grant. It is a surveyed section, title to which has completely vested in the state (citing authorities). After this complete vestiture of title in the state, a national forest reservation was created, which within its exterior boundaries included this section 16 in the county of Mono. The situation thus disclosed is that complete title to the land having vested in the state of California before the creation of the forest reserve, that title was in no way affected or impaired by the act of the federal authorities in creating this reserve, any more than would their act affect the right of any other private proprietor, owning land within the delimited boundaries of the reservation. (*Curtain v. Benson,* 222 U. S. 78, 32 Sup. Ct. 31, 56 L. ed. 102.)"

The state court, after discussing at length the meaning of the term "indemnification," as used in said section 2275, Rev. Stats. U. S., held that it could mean nothing other than making good a loss, and title to this section having been complete in the state, there could be no indemnification for that which had never been lost, and then says:

"And equally certain is it that though the Interior Department may elect to ignore the decisions of the court of the United States, it is still not within the power of such department to give, to sell or exchange public lands without authority from Congress, and if, as the federal courts have decided, Congress has not given the department such power, the department's efforts and acts in the exchange of such lands, when brought before a judicial tribunal, will be declared null and void. The conclusion upon this branch of the consideration therefore necessarily must be that while the state of California has by appropriate legislation offered to exchange such lands for other lands of the United States, there is no law of the United States authorizing such ex-

change, and no act of Congress of the United States taken in contemplation of such exchange, present or future. Therefore the position of our state law (Act of 1911, which is the same as c. 39, p. 85, Idaho Laws of 1911, above referred to), that this section may be used as a basis for indemnity selections provided by law, is without any present efficacy, by reason of the fact that there is no law of the United States authorizing indemnity selections in such cases, or authorizing an exchange of lands in any other way.''

In order to have reviewed this decision of its own court, the state, through its executive department, prosecuted error to the federal supreme court in *California v. Deseret Water, Oil & Irr. Co., supra,* which reversed the state court upon the federal question involved. It is important, however, in determining how far the federal supreme court's decision is binding upon the state court and to what extent it may be relied upon as an authority in support of the position which defendants are taking, to determine just what the federal supreme court has held. We quote the following excerpts from the opinion:

''The federal statutes involved are secs. 2275 and 2276 of the Revised Statutes of the United States, as amended in 1891 (26 Stats. L. 796–7, c. 384; Comp. Stats. 1913, secs. 4860–4861). As we have already stated, the state has elected to surrender this section 16 to the United States, asking compensation in other lands for the same under the provisions contained in the sections of the federal statutes above referred to. It is the contention of the state that because of such action, the lands in question in equity belong to the United States, and that consequently they could not be condemned for the use of the water company.

''The controversy reduces itself to the precise question whether, when a forest reservation subsequently proclaimed includes within its limits a school section, surveyed before the establishment of the reservation, the state may under sec. 2275, Rev. Stats. of the U. S., as amended in 1891, waive its right to such section and select other lands in lieu thereof.

"The first part of the section, giving the right to select lands in lieu of such as were settled upon with a view to pre-emption or homestead, is clearly limited to settlements made before survey of land in the field, and under the following provision giving the right of selection to the state where the lands are mineral or are included in an Indian, military or other reservation, or are otherwise disposed of by the United States, it may well be that in the absence of the proviso, the right of selection would be confined to instances where the lands were unsurveyed when found to be mineral or included in a reservation, and this because if the lands were unreserved and not known to be mineral when surveyed, the title would then vest in the state (citing authorities), and because lieu selections are usually, although not always, permitted where the right to the place lands is cut off before the time for the title to become vested. But the proviso, which was not originally in the statute, is an important part of it, and according to a familiar rule must be given some effect. It reads: 'Where any state is entitled to said sections 16 and 36, or where said sections are reserved to any territory, notwithstanding the same may be mineral land or embraced within a military, Indian or other reservation, the selection of such lands in lieu thereof by said state or territory shall be a waiver of its right to said sections.' This language, while not as clear as it might be, operates, as we interpret it, to give to the state a right to waive its right to such lands, where, as in this case, the same are included in a forest reservation after survey; that is, after the title vests in the state."

The court proceeds to say that the interpretation of this statute has not been uniform in the Department of the Interior, and it has been otherwise construed in *Hibberd v. Slack,* 84 Fed. 571, but this interpretation, for which the state insists, has been given by the department to the statute in a number of cases, citing *Gregg v. Colorado,* 15 Land Dec. 151; *Rice v. California,* 24 Land Dec. 14; *Re California,* 28 Land Dec. 57; *Re New Mexico,* 29 Land Dec. 364; *Re School Land Opinions,* 30 Land Dec. 438; *Dunn v.*

*California,* 30 Land Dec. 608; *Re New Mexico,* 34 Land Dec. 599; *Re California,* 34 Land Dec. 613. It is further said that in the brief presented on behalf of the United States it is set forth that selections aggregating thousands of acres have been made in reliance upon this construction of the statute, and that such construction has become a rule of property; for that reason, the court would be slow to disturb such ruling, and furthermore, that the reasoning upon which the departmental interpretation is founded commends itself to the court. But in its conclusion the court says: "It follows that the supreme court of California erred in its decision of the *federal question involved.* With the state questions we have no concern; their ultimate decision is a matter for that court."

Clearly, the foregoing opinion does not go further than to hold that secs. 2275 and 2276, Rev. Stats. U. S., confer upon a state the right to receive indemnity lands for school sections 16 and 36, to which it has a complete and indefeasible title, upon its surrender of such lands to the government, and that its reinvestment of title in the government operates to waive its rights as to such land and take title to the indemnity lands. But as we understand the decision, the federal supreme court expressly disavows any purpose to decide for the state when and under what circumstances it has authority under its constitution and laws to surrender such school lands, which is the question before us for determination. As said in *Re California,* 28 Land Dec. 57, cited with approval in the opinion: "While it is not within the power of Congress or of the executive to divest a state of school lands after its right thereto has attached, the thing contemplated by this statute is an exchange at the solicitation of the state, and not a taking of its property against its will."

It would also appear from *In re School Land Opinions,* 30 Land Dec. 442, also cited with approval in the foregoing opinion, that the Department of the Interior does not regard the transaction for the exchange of school lands as

complete or binding upon either party thereto until the same is approved by the Secretary of the Interior.

It is apparent, therefore, that the question as to the authority of the state board of land commissioners to relinquish surveyed school sections 16 and 36 for the proposed 70,000 acres of lieu lands in townships six, seven, eight and nine south, ranges thirty-six and thirty-seven east, Boise meridian, is before this court unaffected by the federal decision, beyond its making it clear that if the exchange is consummated, the state will obtain a perfect and indefeasible title to this compact body of land. Nor is the question of the expediency of such an exchange a matter for the consideration of this court. As said in *Rogers v. Hawley, supra,* the location, selection, direction, management, control, sale, rental or disposition of state lands involves the exercise of the business and proprietary powers of the state, and the legislature is given the authority to regulate the exercise of that power. It must be understood, however, that this power with regard to a final disposition of the lands granted to the state, title to which has become completely vested and indefeasible in the state, is not a power to divest the state of its title, nor does it permit the state to be divested of its title except in the manner and upon the terms imposed by the grant and the constitution, and neither the legislature nor the state board of land commissioners operating under its direction can authorize anything contrary to the terms of those instruments.

This brings us to a determination of the ultimate question here presented: Has the state board of land commissioners authority by the terms of said section 5 of the Admission Bill, wherein it is provided that "all lands herein granted for educational purposes shall be disposed of only at public sale," or that part of section 8 of article 9 of the constitution which provides that "no school lands shall be sold for less than ten dollars per acre," when these provisions are considered separately and together, to exchange surveyed school sections 16 and 36 for other lands?

It is clear that the federal supreme court in *California v. Deseret Water, Oil & Irr. Co., supra,* in construing said sections 2275 and 2276 of the United States Revised Statutes, as these sections were amended in 1891, subsequent to the passage of the Idaho Admission Bill, held that Congress has authorized the government to consent to such exchange, but it has not undertaken therein or elsewhere to say that these provisions of the statute go farther than to be permissive. As in that opinion declared, the question as to whether or not the state under its constitution and laws has authority to make such exchange is one for the ultimate decision of the state's courts. This court is bound by the plain provisions of this constitutional provision, which clearly and unmistakably prohibits such an exchange. We therefore hold that the state board of land commissioners is without authority to effect such proposed exchange with the government of the United States, and that any action that it has taken or may attempt to take to carry out this exchange is contrary to the constitution and null and void.

It therefore results that the writ of prohibition should issue as prayed for.   No costs awarded.

McCarthy and Dunn, JJ., concur.

Reaffirmed without opinion, after rehearing, July 5, 1923.