183 P.2d 607

STATE ex rel. DEL CURTO et al. v. DISTRICT COURT OF FOURTH JUDICIAL DIST. et al.

No. 4970.

Supreme Court of New Mexico.

May 28, 1947.

Rehearing Denied July 24, 1947.

Reese & Reese, of Roswell, and Rodey, Dickason & Sloan, of Albuquerque, for petitioner.

W. A. Keleher and Theo. E. Jones, both of Albuquerque, for respondents.

McGHEE, Justice.

This is an original action seeking to prohibit a retrial of Burguete v. Del Curto, which involves the ownership of a state grazing lease, in which we reversed the judgment of the district court because the state was not a party to the suit. Burguete v. Del Curto, 49 N.M. 292, 163 P.2d 257.

A mandate was issued directing the district court to vacate its judgment and dis-

miss Burguete's cause of action, but a majority granted a motion to recall the original mandate and ordered the issuance of a new one in which the direction to dismiss was omitted. The Commissioner of Public Lands then entered a limited appearance as a defendant in the lower court. For the purpose of this case only we will treat it as a general appearance on his part.

We held in State ex rel. Evans v. Field, 27 N.M. 384, 201 P. 1059, and in State ex rel. Otto v. Field, 31 N.M. 120, 241 P. 1027, that an action against the Commissioner of Public Lands, except to compel the performance by him of a ministerial duty, is an action against the state, which may not be maintained without its consent.

The only authority which may give this consent is the legislature. We hold that the attempt of the Commissioner of Public Lands to make the state a party defendant was a nullity, and that, therefore, it is still not a party to the suit.

We must hold, therefore, that the order modifying the mandate in Burguete v. Del Curto, supra, was improvidently made; that the district court is without jurisdiction to do anything in the case except to dismiss it as directed by the majority opinion in Burguete v. Del Curto, supra.

The alternative writ of prohibition heretofore issued will, therefore, be made absolute, and it is so ordered.

BRICE, C. J., and LUJAN and COMPTON, JJ., concur.

SADLER, Justice (dissenting).

I dissent.

The prevailing opinion is not quite accurate in stating that the majority in the opinion on former appearance before us of this litigation "granted a motion to recall the original mandate and ordered the issuance of a new one in which the direction to dismiss was omitted." The majority in that case accomplished more than that. Indeed, they made no specific direction as to issuance of a new mandate at all. They simply deleted from the *opinion* on file the direction for a dismissal upon remand and substituted for such language, the following:

"The judgment is reversed and the cause remanded with direction to the trial court to set aside its judgment and for further proceedings consistent with and conformable to the views herein expressed."

The foregoing is said to demonstrate that the order entered on motion to recall mandate, in effect, was an opinion on rehearing since it removed from the opinion filed one direction to the district court on how to proceed following remand and substituted therefor another direction. Necessarily, the change was for the purpose of giving the plaintiff an opportunity to

satisfy the trial court that the Commissioner could properly be made a party defendant, either with or without his consent. This was a decision the majority in the former opinion expressly declined to make since the matter was not before this court for review, never having been ruled upon by the trial court. The latter court, *the only court* having original jurisdiction to decide the question took the view that neither the state nor the Commissioner was a necessary party to the suit.

That the matter was never passed upon by the court in the former opinion is abundantly demonstrated by excerpts from the opinion. At one point, we said [49 N. M. 292, 163 P.2d 258]:

"The jurisdiction of the Commissioner not ever having been invoked by any of the transaction, as between any of the parties, touching upon the use of the lands by one not a party to the lease, and himself a stranger to the Commissioner, and this proceeding not arising out of a contest action before the Commissioner, and the Commissioner not being made a party hereto, can this suit be maintained?"

Again, at another point, the opinion reads:

" * * * Certainly, in any event, the jurisdiction of a court of equity may not be invoked absent this necessary and indispensable party, the Commissioner.

"The Commissioner is not a party to this litigation."

Further on, the opinion proceeds:

"And, whether the Commissioner could be made a party to such suit without his consent, we, likewise, need not, and do not decide. We know that in State ex rel. McElroy v. Vesely, 40 N.M. 19, 52 P.2d 1090, mandamus was employed without question of its appropriateness if it could be said that a clear legal duty rested upon the Commissioner to respect a clear legal right. See also American Trust & Savings Bank of Albuquerque v. Scobee, supra [29 N.M. 436, 224 P. 788], in this connection."

In the former opinion, it was clearly held that the Commissioner was an indispensable party. As already pointed out, we expressly declined to offer a gratuitous opinion on whether he could be made a party. no effort having been made to join him as such and any declaration on the subject operating to review no ruling of the trial court. Accordingly, in a motion to, recall the mandate, the plaintiff informed this court of the Commissioner's willingness to enter a voluntary appearance in the case and asked such an amendment of the mandate as would give the lower court power to act upon the application for leave to appear. We so amended the language of our opinion on file as to permit this. And, now, the defendants in that case, but as

the relators here, seek by prohibition to deny the district court the exercise of jurisdiction, obviously possessed by it, to determine in the course of trial whether the appearance before it of a state official as a party litigant amounts to an unwarranted appearance by the state. The present majority sustain them in this claim.

If the defendants be correct in this contention, then when this court entertained appeals in State ex rel. Evans v. Field, 27 N.M. 384, 201 P. 1059; American Trust & Savings Bank of Albuquerque v. Scobee, 29 N.M. 436, 224 P. 788; State ex rel. Otto v. Field, 31 N.M. 120, 241 P. 1027; Looney v. Stryker, 31 N.M. 557, 249 P. 112, 50 A.L.R. 1404; Arnold v. State, 48 N.M. 596, 154 P.2d 257, and others unnecessary to cite, where the state's immunity to suit was involved, we were reviewing judgments and decrees that were complete nullities and might have been ignored as such in the absence of direct review.

In this very case, where presence of the state as an indispensable party was urged by motion as a ground for dismissal and the motion denied, could it be successfully maintained that, absent a direct review, the judgment entered would be a nullity as between the plaintiff and defendant, granting the same would not be binding on the state? Cf. Mann v. Whitely, 36 N.M. 1, 6 P.2d 468. If not, then the district court had jurisdiction to render it even though

it determined erroneously, as in our former opinion we held it did, its power to proceed. State ex rel. St. Louis Rocky Mountain & Pacific Co. v. District Court, 38 N. M. 451, 34 P.2d 1098.

In the group of cases cited, supra, involving the state's immunity from suit, it so happens that in each of them the claim to immunity was sustained. But the claim is not always well taken. Board of Trustees of Town of Casa Colorado Land Grant v. Pooler, 32 N.M. 460, 259 P. 629; Gamble v. Velarde, 36 N.M. 262, 13 P.2d 559. See, also, the historic case of United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171. As indicated in the Pooler case, supra, the matter is one rarely easy to decide.

In that case, this court said [32 N.M. 460, 259 P. 630]:

"Whether a suit nominally against individuals is really against the state is not always easy to decide. The question has given the courts much trouble, and in some situations its consideration has disclosed contrariety of opinion. See case notes, 108 Am.St.Rep. 830 and 44 L.R.A.(N.S.) 189."

In both the cases of Board of Trustees v. Pooler and Gamble v. Velarde, cited supra, the claim, although interposed, was not sustained. Are we to understand that our district courts have jurisdiction to resolve the issue when they determine it correctly but not when they decide it erro-

neously? In answer to a similar contention in State ex rel. St. Louis, Rocky Mountain & Pacific Co. v. District Court, supra, we said [38 N.M. 451, 34 P.2d 1099]:

"It is argued that 'subject matter,' as the term is used in the Gilmore Case [(Gilmore v. District Court), 35 N.M. 157, 291 P. 295], means not jurisdiction of workmen's compensation litigation, but, to be specific, jurisdiction of claims filed within the statutory time. That is to say, the statute confers jurisdiction upon the district courts to award compensation to those entitled to it, not to those not entitled; to render some judgments, not others.

"We consider the law settled to the contrary in this state. Here the test of jurisdiction is not the right or authority to render a particular judgment; it is the right or authority to render any judgment."

In the Heron case, 46 N.M. 296, 128 P.2d 454, at page 458, after referring to the foregoing exposition on prohibition in the St. Louis, Rocky Mountain & Pacific Co. case, supra, we applied a test which still obtains. Mares v. Kool, 51 N.M. 36, 177 P.2d 532. We said:

"We think it fair to say of our decisions on the question when to prohibit, in line with what has just been quoted from State ex rel. St. Louis, Rocky Mountain & Pacific Co. v. District Court of Eighth Judicial District, supra, that if, absent pro-hibition in the given case, the judgment therein rendered, unless reversed for error on direct review, would be binding on the parties and not subject to collateral attack as a mere nullity, then prohibition will not lie; otherwise it will."

Unless the judgments reviewed by us in the many cases cited supra, brought here by appeal and involving the question of the state's immunity to suit, all were nullities; unless, in disregard of our former decisions in the cases of State ex rel. St. Louis, Rocky Mountain & Pacific Co. v. District Court, 38 N.M. 451, 34 P.2d 1098; State ex rel. Heron v. District Court, 46 N.M. 296, 128 P.2d 454; Mares v. Kool, 51 N.M. 36, 177 P.2d 532, and many others which might be cited, we are to transform prohibition before us from a yardstick of jurisdiction into a vehicle for review, then the alternative writ herein was improvidently issued and should be discharged.

It should be remembered that all we held in Burguete v. Del Curto, 49 N.M. 292, 163 P.2d 257, 260, was that, upon the state of the record as it then stood, the plaintiff could not proceed because of the absence of an indispensable party—the state as owner of the land under lease. At times we mentioned the Commissioner of Public Lands as the indispensable party, unquestionably thinking of him as synonymous with and the representative of the state and at other times contemplaing him as a party when not so viewed, as in connec-

tion with our citation of the Vesely case on the question whether the Commissioner could be joined without his consent, where we said:

"We know that in State ex rel. McElroy v. Vesely, 40 N.M. 19, 52 P.2d 1090, mandamus was employed without question of its appropriateness if it could be said that a clear legal duty rested upon the Commissioner to respect a clear legal right."

The point is that we did not go beyond the holding that the state or the Commissioner was an indispensable party. Whether under the special facts of this case the state, or the Commissioner if his presence amounts to a joinder of the state, would enjoy the sovereign's immunity from suit, or whether under the law and facts, consent could be derived; or whether, under the dominion accorded the Commissioner over public lands and his expressed willingness to appear as a party, even viewing his appearance as that of the state, it could be treated as an intervention with him as the actor and the proceeding regarded as one *by* rather than *against* the state—all are questions which remained open, unsettled and undetermined at the time of our decision in the former case. Notwithstanding the state's immunity to suit, none could question the Commissioner's right as a plaintiff to become a party to suits of many kinds in protecting the state's interest in public lands where jeopardized.

All that our further order on motion to recall and amend the mandate accomplished was to correct the erroneous direction in the opinion filed calling for a dismissal and thus leave it open for the district court to exercise its unquestioned original jurisdiction to settle and determine these matters. They were questions that had never been decided arising on our decision that the state was a necessary party. The district court was the only court having original jurisdiction to determine them in the first instance.

Laying aside momentarily any possibility of plaintiff securing presence of the state as a party in a manner that would not amount to a suit against the state, let us suppose this to be a case where the state had consented to be sued. We know as a fact that the state has consented to suit in certain cases. Should we order a dismissal and deny to the plaintiff the privilege of asking leave to amend to make the state a party? Obviously not. The direction should be one for "further proceedings" consistent with the opinion. That is exactly what we have done here. We have given the plaintiff an opportunity, if he can, to show consent of the state to be sued and thereupon to join it as a defendant; or, to secure its presence as a party voluntarily, in the capacity of an actor, such as an intervenor or otherwise, in any manner open to the plaintiff. The fact, if it be a fact,

that the plaintiff may be unable to do so is no proof whatever that the trial court lacks jurisdiction to hear and determine the matter.

My opinion remains the same as that entertained at the time we were considering plaintiff's motion to recall and amend mandate in the former case. In a memorandum circulated among the justices at that time, I stated:

"The only question for serious consideration by us, it seems to me, is whether we should now of our own accord go into the question of the plaintiff's right to get the Commissioner in as a party under any condition or conditions and if we conclude he can not, then let the present mandate stand. I do not favor such a course because it is really a matter for presentation to, and decision by, a Nisi Prius Court in the first instance, its ruling on the matter to be reviewed by us. Hence, we should be exercising an original jurisdiction properly belonging to the trial court, not a proper appellate jurisdiction, and that, too, on a question neither briefed nor argued before us thus far."

The district court has unquestioned jurisdiction to determine whether an appearance by the Commissioner of Public Lands, under the circumstances, amounts to an appearance by the state; and, as well, the further question whether the state can become a party to the suit, voluntarily or otherwise. If these questions be erroneously decided, the remedy of an aggrieved party is by appeal, not prohibition.

Accordingly, the alternative writ should be discharged. The majority concluding otherwise, the foregoing is to express my complete disagreement both with the result and the reasoning of the prevailing opinion.

## On Motion for Rehearing.

BRICE, Chief Justice.

█ The opinion of the court in Burguete v. Del Curto is the law of that case, and is binding on us and on the district court. This court by its mandate did not authorize the trial court to permit new parties to be added, nor did it authorize a new trial. The fact that the Commissioner of Public Lands had signified his willingness to enter *his* appearance in the case as the motion to recall the mandate indicated, is immaterial. We did not authorize any such proceeding, and the district court's jurisdiction is limited by the law as stated in the opinion of the court. The mandate directed the district court to set aside its judgment; and authorized "further proceedings consistent with and conformable to the views herein (in the opinion of the court) expressed."

█ This accorded with the opinion; but if there had been any doubt about this court's intention the district court must look to the opinion, not to motions filed in

this court. Even the mandate must give way to the opinion as to the law of the case, if there is any conflict between them. In First National Bank of El Paso, Tex., v. Cavin, 28 N.M. 468, 214 P. 325, the mandate ordered a new trial with no limitations, and the district court granted it. But the supreme court on a second appeal held that the trial court erred in trying the issues anew, except as to an accounting authorized by the opinion of the Court. This court said:

"Appellee strenuously contends that the lower court, at the second trial, was correct in rehearing all the issues involved, and bases this contention largely upon the wording of the judgment and mandate of this court made and issued at the time this case was first before this court on appeal. * * * In effect they contend that when a case is reversed and a new trial ordered, the lower court is bound by the judgment and mandate only, and may close his eyes to any limitations or conditions imposed in the opinion of the court. * * *

"The only thing contained in the mandate issued on said judgment was a direction to the lower court to grant a new trial. If, as the appellee's counsel contend, the only thing the lower court looks to is the judgment and mandate of this court, it is useless for this court to write an opinion, and, in effect, the rule of the 'law of the case' is destroyed, for no one will contend that the court will look to the judgment or mandate, such as was rendered and issued in this matter, for the law of the case, but necessarily must look to the opinion of the court."

The mandate in this case, however, requires the district court to proceed according to the law as it was adjudged to be in the opinion of the court. It does not permit of a new trial or the addition of parties contrary to the express terms of the opinion. Neither in the opinion nor in the mandate is there any suggestion of a new trial or the addition of parties, and the opinion of the court does not permit of it.

The effect of the opinion is that the state was a necessary party to the suit, and that this court was without authority to pass on the merits, and that it should be dismissed.

The trial court is without authority to retry any issue or permit the making of additional parties, as the opinion of the court fixed the law of the case in favor of sustaining the motion to dismiss for want of an indispensable party. Whether right or wrong, the district court's jurisdiction is limited to a dismissal of the case. A similar question was decided in City of Orlando v. Murphy, 5 Cir., 94 F.2d 426, 429. The court stated in its opinion:

" * * * Where the merits of a case have been once decided on appeal, the trial court has no authority, without express leave of the appellate court, to grant a new

trial and rehearing, or a review, or to permit new defenses, on the merits to be introduced by amendment. * * *

"When, as here, the reversing decision, though it directs the entry of no particular judgment, yet comprehensively canvasses and finally disposes adversely of the right of plaintiff to recover, and remands the cause for further proceedings not inconsistent with the opinion, the District Court should not permit the filing of, and the retrial of the case on, amendments which do not go to and remove the adjudged deficiencies in the cause of action. It should, as was done here, refuse the amendments and proceed to judgment in accordance with the reversing opinion."

It is to be regretted that the Commissioner of Public Lands was referred to in the Burguete opinion a number of times, when the reference should have been made to the state. The Commissioner of Public Lands is merely an agent of the state with such powers, and only such, as have been conferred upon him by the Constitution and laws of the state as limited by the Enabling Act. This court has stated that the Commissioner of Public Lands has "absolute dominion" over the state's public lands, State ex rel. Otto v. Field, 31 N.M. 120, 241 P. 1027; but that was modified in Burguete v. Del Curto, in which it was said [49 N.M. 292, 163 P.2d 259]:

"It's well settled in New Mexico that under the Enabling Act, our Constitution and the statutes based thereupon, the Commissioner of Public Lands has complete dominion, which is to say complete control, over state lands. (Citations.) This 'dominion' is, of course, subject to the restrictions imposed by the Enabling Act, the Constitution, and the statutes, and the manner of its exercise is subject to review by the courts."

But this last statement fixes the Enabling Act, Constitution and state laws as limitations on his authority, not a grant of it. The fact is the Commissioner of Public Lands has only such authority as has been granted to him by the Constitution and state laws, as limited by the Enabling Act.

By the Constitution of the State of New · Mexico, Article 21, Sec. 9, the following compact with the United States was adopted:

"This state and its people consent to all and singular the provisions of the said act of congress, approved June twentieth, nineteen hundred and ten, concerning the lands by said act granted or confirmed to this state, the terms and conditions upon which said grants and confirmations were made and the means and manner of enforcing such terms and conditions, all in every respect and particular as in said act provided."

By this compact the Enabling Act became a part of the Constitution of New Mexico. Lake Arthur Drainage Dist. v. Field, 27 N.M. 183, 199 P. 112.

Article XIII of the Constitution reads as follows:

"Sec. 1. All lands belonging to the Territory of New Mexico, and all lands granted, transferred or confirmed to the state by congress, and all lands hereafter acquired, are declared to be *public lands* of the state *to be held or disposed of as may be provided by law* for the purposes for which they have been or may be granted, donated or otherwise acquired. * * *

"Sec. 2. The commissioner of public lands shall select, locate, classify, and have the direction, control, care and disposition of all public lands, *under the provisions of the acts of congress relating thereto and such regulations as may be provided by law*." (Our emphasis.)

The Constitution of New Mexico in this particular is very similar to the Constitution of Idaho; Secs. 7 and 8 of Art. IX of which read as follows:

"Sec. 7. The Governor, Superintendent of Public Instruction, Secretary of State, and Attorney General * * * shall constitute the State Board of Land Commissioners, *who shall have the direction, control and disposition of the public lands of the State, under such regulations as may be prescribed by law.*

"Sec. 8. It shall be the duty of the state board of land commissioners to provide for the location, protection, sale or rental of all the lands heretofore, or which may hereafter be granted to the state by the general government, *under such regulations as may be prescribed by law,* and in such manner as will secure the maximum possible amount therefor." (Our emphasis.)

The powers conferred by the Idaho Constitution on the State Board of Land Commisioners are so similar to those conferred by our Constitution on the Commissioner of Public Lands as to render highly persuasive what is said by the Idaho Supreme Court in Balderston v. Brady, 17 Idaho 567, 107 P. 493, 494, regarding such powers. The Board of Land Commissioners of that state were going to relinquish certain public lands to the United States, as ordered by a resolution of the legislature. In that action brought to contest the right and authority of the board to release the land to the United States, the court held that the resolution was not *"a regulation prescribed by law,"* and held that the board of land commissioners was not authorized to make such release, and further stated:

"In support of the demurrer the defendant contends that the board is vested by the Constitution (section 7, art. 9) with *unqualified power and authority* over the lands granted by the United States to the state, and is vested with *unlimited discretion* in the matter of selection of such lands, and may likewise, in its discretion, relinquish any such lands." (Our emphasis.)

Secs. 7 and 8 above quoted, are then quoted by the court.

"Now, there can be no question or doubt but that the 'direction, control and disposition of the public lands of the state' is vested in the State Board of Land Commissioners. It is equally clear and certain that this power must be exercised *'under such regulations as may be prescribed by law.'* Both of the foregoing sections of the Constitution contain the same provision as to this *limitation of power.* * * *

"The real question then recurs: Has the state *authorized* the relinquishment of sections 16 and 36, and has the *State Land Board* the authority to relinquish the state's right to such land? But one answer can be given to this query. *The authority for such an act cannot be found in either the Constitution or statute.* It is therefore perfectly safe to say that no such power exists. We have hereinbefore said that the board must act under the law. It must find authority in the Constitution and statute for its acts. * * *" (Our emphasis.)

Also see Newton v. State Board of Land Commissioners, 37 Idaho 58, 219 P. 1053; Walpole v. State Board of Land Com'rs, 62 Colo. 554, 163 P. 848; Burke v. Southern Pacific Ry. Co., 234 U.S. 669, 34 S.Ct. 907, 58 L.Ed. 1527.

■ Nothing stated in this opinion is intended to question the authority of the Commissioner of Public Lands to reserve to the state all minerals in any contract, sale or conveyance of state lands. We

agree that he has that authority, as held in State ex rel. Otto v. Field, supra.

■ There is no law authorizing the Commissioner to substitute himself for the state in litigation; nor can he make the state a party or enter its appearance without specific authority from the legislature, and none has been granted to him which will authorize him to enter the appearance of the state in the Del Curto case, and that is the effect of his act. See State ex rel. Evans v. Field, 27 N.M. 384, 385, 201 P. 1059.

■ The district court lost complete jurisdiction of the Del Curto case when it was appealed to this court. Upon remand it regained only such jurisdiction as the opinion and mandate of this court conferred; and in effect that was a direction to dismiss the case because of the lack of an indispensable party.

The contention that the district court should first pass upon the question of the right of the Commissioner of Public Lands to make himself a party to the suit as a representative of the state, in view of the preceding conclusion, we think need not be answered. But as the Commissioner cannot make himself a party to the suit in his official capacity, because it would be in effect an attempt to make the state a party without authority of law, it would but prolong litigation to permit it.

Our original conclusion will not be disturbed.

It is so ordered.

LUJAN, McGHEE, and COMPTON, JJ., concur.

SADLER, Justice (dissenting).

The majority still furnish no reason why this court should abandon its long established doctrine of declining to interfere by prohibition with proceedings below where the trial court has jurisdiction of the subject matter and the parties, even if we can see the court about to fall into error. All we held in the former case was that the state was an indispensable party. Whether it could be made a party is left undetermined. Since when, then, is a district court without jurisdiction to decide the preliminary question whether the state has consented to be sued in given circumstances and, if so, whether joinder as a party of a named public official amounts to a suit against the state?

Of course, it is easy enough for us to anticipate the correct answers to these inquiries while hearing an appeal and endeavor to take a short cut to final determination by directing dismissal on remand. We did so in our original opinion and then reversed the holding on reconsideration by substituting a direction for "further proceedings." To say now that the trial court lacks jurisdiction to "further proceed" in the face of that command is as insupportable as to assert ourselves without jurisdiction so to direct. The majority are holding the district court lacks jurisdiction to decide an *elemental* question certain to arise in every suit or action by or against the state, namely, has the legislature consented?

What is said in the prevailing opinion touching the "absolute dominion" of the Commissioner of Public Lands over state lands as dwelt upon in previous decisions of this court meets with my approval.

I persevere in my dissent, otherwise.