MRS. ROE BLEDSOE ET AL. v. R. E. FITTS.

Decided November 21, 1907, December 12, 1907.

**1.—Husband and Wife—Wife's Separate Property—Gift Causa Mortis.**

As an incident to the husband's power of exclusive management and control of the wife's separate property (Rev. Stats., art. 2967), his consent to the exercise of the power of sale or gift by the wife of her separate personal property during marriage is necessary to its validity, and her gift *causa mortis* with delivery of possession of money and notes, without his consent, did not pass title thereto, though possession remained with the donee till after her death.

**2.—Executory Sale—Legal Title—Descent and Distribution.**

The legal title remaining in the grantor who reserves an express vendor's lien for purchase money, by its descent to collateral kindred of the wife, while the purchase money notes, as personalty, were inherited by the husband, will not suffice to make the husband liable to such heirs of the legal title for conversion of the notes or their proceeds.

Appeal from the District Court of Wood County. Tried below before Hon. R. W. Simpson.

*M. B. Briggs* and *Warren & Briggs,* for appellants.—A married woman can dispose of her separate personal property by parol gift, causa mortis, without the consent of her husband. Thompson v.

Thompson, 12 Texas, 330; Chevalier v. Wilson, 1 Texas, 173; Hemingway v. Matthews, 10 Texas, 207; Engleman v. Deal, 14 Texas Civ. App., 1; Ellison v. Keese, 25 Texas Supp., 90; 14 A. & E. En. of Law, p. 1052; Connor v. Root, 11 Colo., 183; Marshall v. Berry, 13 Allen (Mass.), 43; Broaddus v. Broaddus, 27 S. W. Rep., 989.

*Hart & Hart,* for appellee.—A married woman can not dispose of her separate personal property by parol gift, causa mortis or any other way without the consent of her husband. Hemingway v. Matthews, 10 Texas, 207; Kempner et al. v. Comer et al., 73 Texas, 200; Sayles' Civ. Stats., art. 2967 and art. 1689; Speer on Law of Married Women, p. 116, sec. 118; 83 Texas, 355; 8 Texas Ct. Rep., 54.

LEVY, ASSOCIATE JUSTICE.—Appellants asserted ownership of certain money and vendor's lien notes claimed to have been acquired by them by parol gift *causa mortis* from their sister, Mrs. Annie Fitts, deceased. They instituted this suit against the appellee to recover personal judgment against him, according as the alleged facts might be proven in their several declarations, either personally for his conversion of the said notes and money, or for their value, against him as heir and devisee receiving property of the estate of his father, Dr. A. O. Fitts, deceased, who, it was alleged, had converted the said property and invested the proceeds thereof in other property. They also alleged in the petition that if the property was not a parol gift, then that the notes in connection with the deed conveying the land constituted and evidenced an executory contract, the legal title to the land, being the separate property of their sister, remained in their sister as vendor and was her separate property at her death, and as appellants are her only lawful heirs, descended to them; and because of the conversion of the vendor's lien notes, by appellee, or his deceased father, the appellants are entitled to recover the value.

Appellee answered by general denial, and that he is an heir at law of A. O. Fitts, and, as such, entitled to the property, and is also entitled to the same as devisee under the will of his father; that the property was personal property, and upon the death of Mrs. Annie Fitts descended to her husband, Dr. A. O. Fitts.

Trial was had before the court without a jury. The court rendered judgment for the appellee, and the appellants appeal.

The court made his findings of facts, which is used as the evidence, and which is, in substance, that Dr. A. O. Fitts was married twice, and the appellee, R. E. Fitts, is his son by his first wife. That Dr. A. O. Fitts, after the death of his first wife, married Mrs. Annie Wilburn, a widow with no children; and that she died without issue by Dr. A. O. Fitts, July 4, 1900. That at the time of her marriage with Dr. A. O. Fitts, she owed personal property and 280 acres of land in her own right as separate property. That after her marriage with Dr. A. O. Fitts, and on June 8, 1899, she conveyed the land by deed, joined by her said husband; and that

as part consideration therefor the purchaser gave his three promissory notes, each for the sum of $400, due one, two and three years after date, and payable to A. O. Fitts and wife, Annie Fitts. That one of said notes was paid to Annie Fitts prior to her death, and the money kept by her. That Mrs. Annie Fitts during her last illness, and realizing her approaching death and in contemplation of death, made an oral gift to her sister, Mrs. Fannie Chapman, of the two purchase money notes before mentioned, being the second and third notes given by the purchaser in part payment of the 280 acres of her aforementioned separate real estate, and also $560 in money, and delivered said notes and money into the hands and possession of the said Fannie Chapman, to be equally divided after the death of said Mrs. Annie Fitts between her and a brother then living. The said money and notes at the time were the separate property of Mrs. Annie Fitts and in her actual possession at the time, and had been in her possession from the time they were given. That Mrs. Annie Fitts died in about three days after making the gift. That Dr. A. O. Fitts and Mrs. Annie Fitts at the time of her death, and prior thereto, were living together as husband and wife. That Dr. A. O. Fitts was about the premises at the time when the gift was made, but was not present and knew nothing of it until after the death of his wife. That the gift was made without the knowledge or consent of Dr. A. O. Fitts, and that had he known of it he would have objected and protested against it. That after the death of his wife, and before her burial, Dr. A. O. Fitts told Mrs. Fannie Chapman that there was some money somewhere about the premises and that it would not do for every one to leave and go to the funeral, whereupon she told him of the gift made by her sister, Mrs. Annie Fitts, and he at once demanded possession of all the money and notes; and that because her sister was lying a corpse, and in order to prevent a scene and quarrel at such a time, she delivered the money and notes to Dr. A. O. Fitts, and that it was not voluntarily delivered to him. These notes were afterwards paid by the purchaser of the land to Dr. A. O. Fitts. Dr. A. O. Fitts died in April, 1902, testate; his will was duly probated, and by his will he bequeathed his property to appellant, his son. Upon the death of Dr. Fitts appellant took immediate possession of all property bequeathed to him and retained same. The value of the property so received by appellant was $3700 at the time he received same. The court held in his conclusion of law that Mrs. Annie Fitts at the time she made the gift, being a married woman, could not legally dispose of said personal property without the consent of her husband.

The appellants contend that the court erred in his conclusion of law, and urge that a married woman can dispose of her separate personal property by gift, *causa mortis,* independent of her husband's assent or consent, and without his consent.

Article 2967, Rev. Stats. of 1895, reads: "All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterward by gift, devise or descent, as also the increase of all lands thus acquired, shall be the separate property

of the wife; but during the marriage the husband shall have the sole management of all such property." The authority of management given to the husband in this proviso of the article does not include the power to sell or dispose of or lease for over one year the wife's separate property, either real or personal, without her joinder or concurrence. Cartwright v. Hollis, 5 Texas, 152; McKay v. Treadwell, 8 Texas, 180; Richardson v. Hudson, 3 S. W. Rep., 27; Pitts v. Elsler, 87 Texas, 347; Dority v. Dority, 96 Texas, 215; Kempner v. Comer, 73 Texas, 200. This power of sale by her is an incident to her absolute ownership of the property. Can she legally exercise, during marriage, the right to dispose of her separate personalty, acting alone and without the consent or assent of her husband thereto, he being present in the marriage relation?

The phraseology of this proviso of the article mentioned would seem, and has the meaning, to leave to the husband to determine the matter of her exercising the right of disposition of her separate personalty; and in like direction, by inference, that his assent to the exercise of the right of disposition by sale or gift, during marriage, would be necessary. "Sole management," as the words are employed in the proviso of the article, implies the power of control and possession of the property as well. Personal property could not be managed without the power to control and have it in possession to that end. To manage money, for example, it is necessary to employ or invest it; and it follows that possession and control of the money is necessary in order to employ or invest it. In Milburn v. Walker, 11 Texas, 329, the court uses this expression: "Our statute with a single proviso sweeps all such property, and in all cases, under the management of the husband." Speer, on his Law of Married Women in Texas, sec. 36, lays down the doctrine of the law as to the powers of the husband over the wife's separate property, as against her. "The power of the husband in the sole management of his wife's separate property during the marriage relation, is a right conferred by law on him and not by her authority or consent, and may in point of fact be contrary to her wishes. He is entitled to take possession and control of her property wherever found, and she herself can not interfere except it be to prevent a destruction or conversion of it." While the case of Hemingway v. Matthews, 10 Texas, 207, turns prominently on the fact that the personal property in that case was presumptively community property, still the force and effect of the holding in that case was to decide that whether the note payable to Mrs. Hamilton or order, and which was endorsed by her alone, was her separate or community property, still in either event it was incumbent upon the endorsee to allege and show in the petition that the endorsement of Mrs. Hamilton alone, she being a married woman, was made with the assent of her husband or under such circumstances as would authorize the wife to dispose of her separate property, or community property, without the assent of the husband, before she could be liable as an endorser. If the power exists to the husband under the law to exercise his right of sole management even contrary to his wife's wishes thereto, it is an argument in like direction, and a

proper construction of his authority, that this grant in the proviso to the husband of authority of exclusive control and possession of his wife's separate property, would operate as a legal restriction or restraint upon her right to exercise the power of selling or giving away her property, acting alone, during marriage, where the husband is present in the marriage relation. Likewise it would result as a sequence under the rules of construction, as a necessary and reasonable implication, as an incident to the husband's power of exclusive management and control, that his consent or assent to the exercise of the power of sale or gift by the wife of her property during marriage is necessary to the legal validity of the sale or gift. By express language the authority of the husband continues to him "during marriage," which means as long as the marriage relation exists. It means as to operation of the power of management, that at no time during the marriage relation is it at the will of the wife to deprive the husband of this right of control and possession, he being present in the marriage relation.

Where the wife actually delivers to the donee the thing, without her husband's consent or assent, and it remains with the donee until the death of the donor without the knowledge or consent of the donor's husband, can the donee enforce the passing of the gift as a valid gift, *causa mortis?*

One of the necessary things to constitute a valid gift, *causa mortis,* is that there must be a delivery of the thing given; it is an essential to legal consummation of the transaction. The kind of delivery required is thus laid down: "The delivery that will sustain a gift, *causa mortis,* must be such a delivery as would support the transaction as a gift *inter vivos,* if such were the intention of the donor. That is, there must be an actual unequivocal and complete delivery of the property during the lifetime of the donor wholly divesting him of the possession and control of the property, subject to the power of revocation." 14 A. & E. Ency., p. 1058, and authorities cited in footnote. Further, the power of the donee as to the possession of this property and his right to retain possession, is thus laid down: "There must not only be an actual and complete delivery of the property to the donee, but he must retain possession of it uninterruptedly until after the death of the donor." Ibid, p. 1061; 6 Am. St. Rep., p. 166. Thus do these rules require the dominion and possession of the property to be placed in the donee. "There is no distinction between *donatio inter vivos* and *donatio causa mortis* as to the requisites of the delivery. In either case delivery is essential to the validity. The transfer of dominion must be complete in the latter case, defeasible on the recovery of the donor." Chevallier v. Wilson, 1 Texas, 160. "The donor must part not only with the possession, but with the dominion the property." Ibid. The Supreme Court has adopted the definition of the word "dominion" to be, "perfect control in right of ownership." Baker v. Westcott, 73 Texas, 129. In Coles v. Perry, 7 Texas, 109, the court, in passing on the question of how dominion in a thing is acquired in a contract of sale, says: "It serves, then, for a general rule, that the title never gives a right in the thing, or what is the same the do-

minion, unless delivery be joined with it; consequently neither is
title sufficient without delivery, nor delivery without title." Dominion
in this case would not be full in the donee, though Mrs. Fitts had
absolute title, if the delivery by Mrs. Fitts of the property was legally
imperfect perforce the law, because acting alone and without her
husband's assent or consent to her exercise of the authority of dis-
position. Mrs. Fitts' coverture made her permissive possession of
the property still the possession of her husband in law, and her
delivery became imperfect in force of the law. The possession of
the donee would be inconsistent with the right of the husband.
Her change of possession without his consent was against authority
of law, and illegal unless with the husband's assent.

The counsel for appellants argue that the basis of the reasoning
in holding that a married woman can not sell her personal ·or real
property, or make gifts *inter vivos,* without the consent of her hus-
band, would be placed on the ground that the husband is charged
by law with the duty to provide for the wants of the family and
sustain matrimonial charges of the marriage, and that his ability
to discharge these duties might be diminished and impaired if the
wife could dispose of the *corpus* of her separate property and de-
prive him of the income and profits to be derived therefrom in the
aid of the discharge of his duty towards her and the family. But,
they contend, that this reasoning could not operate in a gift, *causa
mortis,* because death dissolves the marriage relationship, and in
consequence the husband would no longer be charged with that duty
of maintenance and support; and therefore Mrs. Fitts' actual de-
livery of the property would be sufficient to pass the gift.

By a careful reference to the cases, however, it is seen that such
basis of reasoning as argued by appellants is rather employed by
the courts in defining and outlining the reciprocal duties and rights
of the husband and wife, and in stating the incidents of marriage
as affecting property. The courts have invoked and applied this
reasoning when they undertook to restore to the wife the right to
exercise her power of disposition of her community and, as well,
separate property, in cases where the husband had deserted her or
abandoned her or was civilly dead; or, in other words, where the
wife is clothed by the courts with powers of a *feme sole* under such
circumstances. Cartwright v. Hollis, 5 Texas, 155; Wright v.
Blackwood & Frazier, 57 Texas, 644, and other cases. Equity juris-
prudence would grant the wife that relief. But could she obtain
this relief where the husband is present and willing to discharge his
duties of the marriage relation?

Simply employing as an illustrative answer to the appellant's
contention of such reasoning, that it would not apply in gifts, *causa
mortis;* take a case where the wife on her sick-bed, in expectancy
of death therefrom, makes a gift of her separate personalty, but
continues in a lingering condition on such sick-bed for two or three
months or longer thereafter before she actually dies; and it becomes
necessary for her husband, during that period of her continued
illness, to make investment of her separate money for such interest
as might be obtained therefrom to bear the expenses of this con-

tinued sickness or to her benefit in her sickness. If the donee is required by law as an essential to a valid gift, *causa mortis,* to "retain possession of it uninterruptedly until after the death of the donor," then, in law, the property would be removed from the husband's control to his injury in discharging his duty. Such a situation would necessarily lead to and be conflicting with the husband's right of control under the statute. Could the husband sue the donee for possession of the property before his wife actually died? If it is answered, as it must be, that he could legally regain possession by law on his statutory authority of sole management upon the proof that possession was given to the donee by his wife without his consent, then it follows certainly that the husband's assent or consent is required to make valid a gift, *causa mortis,* by his wife of her separate personalty, because of her disability to make an effectual and legal delivery of the thing, acting alone.

From this general review and discussion of the powers of a married woman, during her marriage relation, over her separate personalty, her husband being present and not neglecting or abandoning her, it will be observed that this statute as construed provides: (1) that the title to her personalty is and continues to remain in the wife absolutely, requiring as an incident to that absolute ownership that she join in or assent to the sale or gift by her husband; (2) but the right to her to exercise the power of sale or gift is restricted, and that before she is permitted to exercise the free right of disposition or gift she must have the consent or assent of the husband to its exercise; (3) and that in law the exercise of the right of disposition of both dominion and possession is required in a gift, *causa mortis,* to be present in the donor, in life, at the time of the delivery to the donee. Therefore the principle of law involved in the case before us is, where the right of a married woman to exercise the power of sale or gift of her separate personalty is restricted by statute, either in express words or by reasonable and necessary implication, to the consent of the husband to her right to exercise it during the marriage relation, then the exercise of the power by the wife during the marriage relation, and contrary to his consent to her exercise of the power of sale or gift, renders the exercise of the power by her acting alone futile in force of law. This principle is a fixed rule of law, and can not be departed from even though the gift may appear as a fact deserving of departure from the rule. If Mrs. Fitts could not make a gift *inter vivos* without the consent of her husband, it is because the law restricts the exercise of her right to make effectual and legal delivery of the property acting alone. This same principle of law would apply to the exercise of her right to make an effectual and legal delivery in a gift, *causa mortis,* because legal delivery of the thing is essential in each kind of gift. If she has the legal right, acting alone, to exercise the power in the one kind of gift, then she would have the legal right to exercise the power, acting alone, in the other kind of gift.

By another article of the statute, a married woman is given the right to dispose of her separate property, to take effect after her death, by will; and this has been construed by the courts to not require the consent or joinder of her husband. Engleman v. Deal, 14 Texas Civ. App.,

1. But that is by force of statute, and involves a doctrine of law that is different from the one before us in this case.

We are of the opinion that the court did not err in the conclusion of law.

Appellants' second assignment of error is overruled. While a conveyance of real estate reserving title in the grantor to secure the purchase money may be an executory contract, and the legal title remains in the grantor, yet it is not an executory contract in the sense and for the purpose claimed by the appellants, because the payment of the notes would discharge the legal title and place it in the vendee. Stitzle v. Evans, 74 Texas, 599; Willis v. Somerville, 3 Texas Civ. App., 509; Farmers' Loan Co. v. Beckley, 93 Texas, 273; 92 Texas, 562; Cavil v. Walker, 26 S. W., 855; Brotherton v. Anderson, 27 Texas Civ. App., 587; Engelbach v. Simpson, 12 Texas Civ. App., 188; Wilson v. Houston, 36 S. W. Rep., 832; White v. Cole, 9 Texas Civ. App., 277.

The case is ordered affirmed.

### ON MOTION FOR REHEARING.

Appellee applies for a rehearing. The facts in the case do not show that Dr. A. O. Fitts gave his wife actual possession of the money and notes, or acquiesced in her actual possession of the same, or surrendered any right he had thereto by law; but the facts show a finding that he simply gave a permissive and tentative holding of possession to her. The facts further show that her husband did not know of the gift and delivery until the death of his wife; and that, had he known of it, he would have objected and protested against it, and that he did protest upon his first knowledge of the same, which was immediately upon her death. The motion for a rehearing is therefore overruled.

*Affirmed.*

Writ of error refused.