163 P.2d 257

**BURGUETE v. DEL CURTO.**

No. 4853.

Supreme Court of New Mexico.

July 14, 1945.

Motion to Recall and Amend Mandate Granted Nov. 8, 1945.

George L. Reese, Sr., of Roswell, and Rodey, Dickason & Sloan, of Albuquerque, for appellant.

W. A. Keleher and Theo. E. Jones, both of Albuquerque, for appellee.

PER CURIAM.

Upon consideration of the motion for rehearing, the previous opinion is withdrawn and the following substituted:

MABRY, Chief Justice.

Juan Burguete, plaintiff-appellee (hereinafter to be called plaintiff) brings suit against Arthur Del Curto, defendant-appellant (hereinafter to be called defendant) seeking to establish an interest in a lease to a certain section of state school land situated in Guadalupe County, and to enjoin defendant from depriving plaintiff of access to such section and the water and improve-

294

ments thereupon. Judgment was in favor of plaintiff and defendant appeals.

It appears that in 1928 one Eugenio Perez and plaintiff Burguete together purchased an area of land in Guadalupe County adjoining other and separate holdings of the parties, known as the Rooney ranch, and included in this ranch was a section of common school land which they took under lease. This section of school land was leased by Perez and Burguete jointly from the State of New Mexico through the State Commissioner of Public Lands, hereinafter to be referred to as the "Commissioner." In 1937 Burguete being indebted to Perez relinquished his interest in said lease permitting the Commissioner to issue a new lease in the sole name of Perez. This was not an assignment to secure an indebtedness, under 1941 Comp. Sec. 8-835, which could have been done (Lusk v. First National Bank of Carrizozo, 46 N.M. 445, 130 P.2d 1032), but was an outright relinquishment to the state. Perez and Burguete continued nevertheless to share in the use and enjoyment of the school section and the improvements thereon until November, 1939, when defendant Del Curto purchased the ranch from Perez and secured a new lease on the school section in question. Burguete continued for a time to pay Del Curto for one-half of the upkeep, taxes and lease rental as he had done after Perez became the sole owner of the lease and before the sale to defendant; but in the year 1942, defendant Del Curto, who had purchased the ranch from Perez, including Perez's interest in the school section, and had taken a new lease thereupon in his name, and who had, with the consent of the Commissioner, fenced off the school section, then advised Burguete that he had no right therein and would no longer be permitted the use of the water or improvements.

The jurisdiction of the Commissioner not ever having been invoked by any of the transaction, as between any of the parties, touching upon the use of the lands by one not a party to the lease, and himself a stranger to the Commissioner, and this proceeding not arising out of a contest action before the Commissioner, and the Commissioner not being made a party hereto, can this suit be maintained?

Much is said by appellee about how Perez, defendant's predecessor in title, or the former lessor, and plaintiff managed the lease as between them during the time these two were operating their respective ranches, using jointly the school section (which since 1937, was leased only to Perez) and before defendant Del Curto purchased the Perez ranch and took a new lease from the Commissioner in his own name. Also, something is made of the fact that Del Curto had actual notice of the arrangements by which Burguete was using the facilities of the school section at the time he, Del Curto, purchased the Perez ranch and secured the new lease from the Commissioner. It even appears that the defendant himself for some two or three years after 1939 permitted plaintiff to use these school section facilities of water, corrals and buildings through plaintiff's shar-

ing with him, the lessee, the expense of taxes, lease rental and upkeep. But this ended in 1942 when some dispute arose between the parties as to whether plaintiff was fairly bearing his part of the cost of maintenances, etc. Defendant then secured permission from the Commissioner to fence off the school section from access to other cattle and thereafter stood upon his alleged rights as the sole lessee. The Commissioner had never given consent to the use of the school section to any other than the lessee himself, defendant Del Curto, although it does not appear that he had objected to such use, or that he knew of it.

An agreement was made between Perez and Burguete of the date of June 11, 1937, and after the two had dissolved partnership, with reference to the common use of the water and improvements on the section in question for livestock from each of their adjoining ranches. The Commissioner was not a party to this or any other agreement relative to such joint use of the school section or the facilities thereupon.

The court found that plaintiff was not a sub-lessee under defendant's lease from the State and that the Commissioner had never given his consent to the grazing of any of plaintiff's livestock upon said school section or any consent to occupancy or enjoyment of use by anyone excepting the lessee, Del Curto.

It is obvious that any attempted adjudication of rights as between plaintiff and defendant would of necessity affect the rights of the owner of the land, the State of New Mexico. We have said: "and the Commissioner not being a party and not having had his jurisdiction invoked in the first instance, we are unable to see where the district court had jurisdiction to determine any rights as between the parties touching upon the question of a renewal or a new lease of the state land in question." Ellison v. Ellison, 48 N.M. 80, 146 P.2d 173, 174.

Even if it may be said that the question here presented, because of the peculiar facts, or equitable nature of the suit, is not one as to which the Commissioner's jurisdiction should have been first invoked under 1941 Comp., Sec. 8-863, a question we need not, and do not, now decide, certainly, in any event, the jurisdiction of a court of equity may not be invoked absent this necessary and indispensable party, the Commissioner.

The Commissioner is not a party to this litigation; and, he was never consulted about any of the arrangements whereby even the temporary use of the lands so leased could be parceled out and used by another than the lessee; nor had he any knowledge of the practice which plaintiff would now say constitutes a joint lease with himself occupying the status of a co-tenant.

It's well settled in New Mexico that under the Enabling Act, our Constitution and the statutes based thereupon, the Commissioner of Public Lands has complete dominion, which is to say complete control, over state lands. State ex rel. Otto v. Field, 31 N.M. 120, 154, 241 P. 1027,

1041; Dasburg v. Atchison, T. & S. F. Ry. Co., 45 N.M. 184, 191, 113 P.2d 569, 573. This "dominion" is, of course, subject to the restrictions imposed by the Enabling Act, the Constitution, and the statutes, and the manner of its exercise is subject to review by the courts. We said in the last above mentioned case in speaking of the trust feature involved in the Commissioner's control of public lands in New Mexico under the Enabling Act and the Constitution, that "the act sets up the trust, provides for the disposition of these lands only in the manner provided by the act, confines the disposition thereof by 'sale, lease, conveyance, or contract' as therein provided, and makes null and void any other manner of disposition. * * * For a discussion of and decisions upon various phases of the problems that have arisen under this trust, see State ex rel. Otto v. Field, supra; State v. Llewellyn, 23 N.M. 43, 167 P. 414; Elliott v. Rich, 24 N.M. 52, 172 P. 194; Dallas v. Swigart, 24 N.M. 1, 172 P. 416; American Mortg. Co. v. White, 34 N.M. 602, 287 P. 702; Hart v. Walker, 40 N.M. 1, 52 P.2d 123; Lea County Water Co. v. Reeves, 43 N.M. 221, 89 P.2d 607; Terry v. Midwest Refining Co., 10 Cir. 64 F.2d 428." See also American Trust & Savings Bank v. Scobee, 29 N.M. 436, 454, 224 P. 788, and Davidson et al. v. Enfield, 35 N.M. 580, 3 P.2d 979, 980.

The case of Davidson v. Enfield, supra, would afford considerable support for the contention that very broad latitude is given the Commissioner in the statutory contest proceeding in determining rights between parties claiming "any right, title, interest * * * in or to any state lands, covered by any lease, contract, grant or any other instrument executed by the commissioner * * *." There, a like, though not identical, question was involved and we said, in upholding the Commissioner's jurisdiction to entertain the contest and determine issues as between parties other than the Commissioner, which issues involved no ruling of the Commissioner, nor any of the records of the land office, and no instrument of assignment within his possession or control, that "the statute should be viewed in the light cf the very broad powers conferred on the commissioner in the administration of the public lands of this state." Whether the facts in this case are appropriate to invoke such powers, or jurisdiction, we need not, and do not decide.

And, whether the Commissioner could be made a party to such suit without his consent, we, likewise, need not, and do not decide. We know that in State ex rel. McElroy v. Vesely, 40 N.M. 19, 52 P.2d 1090, mandamus was employed without question of its appropriateness if it could be said that a clear legal duty rested upon the Commissioner to respect a clear legal right. See also American Trust & Savings Bank 'of Albuquerque v. Scobee, supra, in this connection.

█ It has been suggested that som⏑ courts have announced a rule to the effect that where the State should be a party, but cannot under the law be sued and does not voluntarily come in, it need not be joined

as a necessary party. Whether or not some courts have applied such a rule, we have foreclosed its application in New Mexico under our decision in American Trust & Savings Bank of Albuquerque v. Scobee, supra. See this case, 29 N.M. at page 453, 224 P. 790, where we said that:

"* * * all persons, whose interest will necessarily be affected by any decree is (in) a given case, are necessary and indispensable parties, and the court will not proceed to a decree without them. Where such necessary parties cannot for any reason be brought before the court, there is nothing to be done except to dismiss the bill, for the suit is inherently defective."

This is not a case where the rights of the state are merely indirectly involved—if that would make a difference under the present circumstances—a distinction likewise noticed in the Scobee case, supra. We there said: "The state, before its contract can be cancelled or reformed, must be before the court and in these circumstances the state has not given its consent to such action."

■ The Commissioner, having complete control, dominion, over these lands, strangers to the lease, "mere trespassers" they were designated in the Dasburg case, supra, cannot, by dealing with state lands and wholly ignoring the Commissioner, invoke the jurisdiction of courts to determine alleged rights in property which the indispensable, sole controlling, agency, the Commissioner, has had no part in establishing, where he is not made a party to the suit, or where the claim relied upon was not first asserted in the statutory contest proceeding before the Commissioner, Ellison v. Ellison, supra. It is much like "A" and "B" going upon the lands of "C" without his knowledge or consent and themselves parceling out the acreage as between the two, and then asking the courts to adjudicate their rights while wholly ignoring the right of "C," the landlord, to be heard.

■ Defendant appropriately called to the attention of the trial court the error into which it was being led both by his request for a conclusion of law and by his motion to dismiss because of the absence of the Commissioner, an indispensable party. The motion should have been granted. That an indispensable party defendant has been omitted may be raised at any time. Miller v. Klasner, 19 N.M. 21, 140 P. 1107.

It cannot be said that the Commissioner would be bound by an adjudication of rights as between the parties to this suit, and, if he could not be bound, any aid attempted to be afforded by the judgment giving plaintiff an equal right with defendant to use the water and improvements on the section in question would be wholly ineffectual. It would be adjudicating rights of a third party in a lease contract made between the State and defendant with an essential party, the lessor, a total stranger to the suit. This cannot be done. American Trust & Savings Bank v. Scobee et al., supra; State v. Fields, supra; Sanders v. Saxton, 182 N.Y. 477, 75 N.E. 529, 1 L.R.A.,N.S., 727, 108 Am.St.Rep. 826.

Plaintiff claims that defendant holds the lease from the Commissioner of Public Lands under some kind of a trust relationship with plaintiff as to an equal undivided interest therein which would give an equal right on the part of both parties to enjoy substantial grazing and water rights upon the land. The Commissioner made a contract and lease with Defendant Del Curto. It is not claimed that the Commissioner himself had any knowledge or information as to any agreements between the parties to this suit or others as to the rights of others than the lessee himself to use and enjoy the privileges of grazing and water use under the lease. Certainly the rights of the State of New Mexico are involved in the suit since it owns the section in question. It is not to be doubted that the Commissioner could have cancelled for subleasing (Lusk v. First National Bank, supra) or permitting trespass without authority. And this would be a matter between the State and the lessee. Hart v. Walker, supra. The trial court found, however, that there was no sub-leasing in the instant case, but that plaintiff under the circumstances, became a joint owner of the lease, although the Commissioner had no knowledge of the circumstances which would obligate him to modify the lease in this respect and accept such plaintiff as a new party thereto.

It could not be said that the Commissioner would not be concerned as to who used the state land. We know that the lessee is obligated under the law to "protect the land leased by him from waste and trespass by unauthorized persons, and failure so to do shall subject his lease to forfeiture and cancelation," 1941 Comp. Sec. 8-705; so it must be admitted that the state has an interest and must not be denied the right to protect that interest to the extent that overgrazing and trespasses by others than the lessees, or others unauthorized to use the land, may not be suffered.

Simply because the state might consent to the grazing of the cattle of the lessee, under his contract, it does not necessarily follow that the lessee may, without the Commissioner's consent, sublet or, under all circumstances, permit any and all others to make use of the land. It is well known that overstocking for watering purposes may be just as harmful to grass lands as over-stocking and indiscriminate trespass for simple grazing purposes. In any event, the Commissioner, representing the state, as landlord, would be entitled to resist any effort at either dividing up or alienating any rights conferred under the lease, as he would be entitled to cancel out for an unauthorized subletting.

The Land Commissioner cannot thus have forced upon him a tenant whom he might not want. Certainly this court, in the absence of the Commissioner, assuming he could at this point, or at all, be made a party to the suit, will not approve a decree "modifying" the terms of the lease so as to show another, a total stranger to the Commissioner, now to have a half interest therein.

It was said in Cook v. Basom, 164 Mo. 594, 65 S.W. 227, 228:

"It is a fundamental principle in equity practice that all persons materially interested, either legally or beneficially, in the subject-matter of the suit, shall be made parties to it, either as plaintiffs or as defendants, so that there may be a complete decree, which shall bind them all. The subject-matter of this suit is the ownership of a lease from Caffee et al. to defendant, Basom. Caffee and his co-owners, the lessors, are not made parties. Defendant has insisted at every stage of the proceeding that they are necessary parties, because of their interest as owners of the leased lands, and because of their right to have the stipulations of their lease performed by their lessee, and their right to select their lessee. This the circuit court denied, and its refusal to require Caffee et al. to be brought in is assigned as error. We think defendant is right. By the decree the plaintiffs are substituted as lessees to Caffee and his co-owners without their consent, and without an opportunity to be heard in a matter of vital interest to them. In this particular case they have forced upon them tenants who had only a short time prior to this suit forfeited a lease to this same land for failure to observe the obligations of their lease, and are compelled to accept the same defaulting lessees in the place of the defendant, to whom they had leased the land. We think it would be hard to find a case in which the real party in interest in the subject-matter of the action had a stronger claim to the protection of the court than the lessors, Caffee et al., have in this case; and we consider it reversible error, in not requiring them to be made parties, and entering a decree affecting their rights without an opportunity to assert and vindicate them."

Defendant strongly urges that in any event, considered upon the merits, and aside from the particular jurisdictional question involved, plaintiff's claim to an interest in the lease, or in the well and improvements thereon, must fail. In view of the disposition here made of the case upon the ground that it is not properly before us, we refrain from considering or deciding any other question.

The judgment is reversed with direction that the cause be reinstated upon the docket and that the judgment appealed from be set aside and the cause dismissed; and it is so ordered.

SADLER and LUJAN, JJ., concur.

BRICE, Justice (concurring specially).

We have stated in more than one case that the Commissioner of Public Lands has "absolute dominion" over this state's lands. We qualified this in Ellison v. Ellison, 48 N.M. 80, 146 P.2d 173, by stating "subject to an appeal" of course to the State Supreme Court. But this dangerous doctrine should be clarified. The Commissioner has absolute dominion over the public lands only in the sense that he is the only one who is authorized to sell or lease such lands. The fact is the law sells the land, and the Commissioner has only such af-

firmative authority as is given to him under the Constitution and laws of the state as limited by the Enabling Act.

The Commissioner cannot give the land away, nor can he sell or lease it for less than the amount fixed by law.

By the Constitution of the State of New Mexico, Article 21, Sec. 9, the following compact with the United States was adopted:

"This state and its people consent to all and singular the provisions of the said act of congress, approved June twentieth, nineteen hundred and ten, concerning the lands by said act granted or confirmed to this state, the terms and conditions upon which said grants and confirmations were made and the means and manner of enforcing such terms and conditions, all in every respect and particular as in said act provided."

By this compact the Enabling Act became a part of the Constitution of New Mexico. Lake Arthur Drainage Dist. v. Field, 27 N.M. 183, 199 P. 112.

Article XIII of the Constitution reads as follows:

"§ 1. All lands belonging to the Territory of New Mexico, and all lands granted, transferred or confirmed to the state by congress, and all lands hereafter acquired, are declared to be *public lands* of the state *to be held or disposed of as may be provided by law* for the purposes for which they have been or may be granted, donated or otherwise acquired * * *.

"§ 2. The commissioner of public lands shall select, locate, classify, and have the direction, control, care and disposition of all public lands, *under the provisions of the acts of congress relating thereto and such regulations as may be provided by law."* (My emphasis)

The Constitution of New Mexico appears to have been copied from the Constitution of Idaho; Secs. 7 and 8 of Art. IX of which read as follows:

"§ 7. The Governor, Superintendent of Public Instruction, Secretary of State, and Attorney General * * * shall constitute the State Board of Land Commissioners, *who shall have the direction, control and disposition of the public lands of the State, under such regulations as may be prescribed by law.*

"§ 8. It shall be the duty of the state board of land commissioners to provide for the location, protection, sale or rental of all the lands heretofore, or which may hereafter be granted to the state by the general government, *under such regulations as may be prescribed by law,* and in such manner as will secure the maximum possible amount therefor." (My emphasis).

So far as the power conferred on the respective authorities is concerned, the language in the two constitutions is the same.

The provisions of the constitution of Idaho were construed before we adopted them, in Balderston v. Brady, 17 Idaho 567, 107 P. 493, 494. The board of land commissioners of that state were going to relinquish certain lands to the United States,

as there was some question of the state's title, and the legislature passed a resolution ordering the board of land commissioners to so relinquish it. In that action brought to contest the right and authority of the board to release the land to the United States, the court stated that the resolution was not a regulation prescribed by law, and held that the board of land commissioners was not authorized to make such release, and further stated:

"In support of the demurrer the defendant contends that the board is vested by the Constitution (section 7, art. 9) with *unqualified power and authority* over the lands granted by the United States to the state, and is vested with *unlimited discretion* in the matter of selection of such lands, and may likewise, in its discretion, relinquish any such lands." (My emphasis).

Secs. 7 and 8, above quoted, are then quoted by the court.

"Now, there can be no question or doubt but that the 'direction, control and disposition of the public lands of the state' is vested in the State Board of Land Commissioners. It is equally clear and certain that this power must be exercised *'under such regulations as may be prescribed by law.'* Both of the foregoing sections of the Constitution contain the same provision as to this *limitation of power.* * * *

"The real question then recurs: Has the state *authorized* the *relinqishment* of sections 16 and 36, and has the *State Land Board the authority* to relinquish the state's right to such land? But one answer can

be given to this query. *The authority for such an act cannot be found in either the Constitution or statute.* It is therefore perfectly safe to say that no such power exists. We have hereinbefore said that the board must act under the law. It must find authority in the Constitution and statute for its acts. No such authority as claimed exists, and it is clear that the State Land Board has no power to relinquish or surrender the right or title of the state of Idaho to any of its school lands. If the state's title to any of these lands comprising sections 16 and 36 is questioned or denied by the department, then the *duty of the state* to secure an adjudication of the matter by the *federal Supreme Court* is plain and unmistakable." (My emphasis).

The authority of the State Board of Land Commissioners of Idaho was again a question before the Supreme Court of that state in Newton v. State Board of Land Com'rs, 37 Idaho 58, 219 P. 1053. This case is one very much in point. The suit was an action brought by a tax payer for a writ of prohibition against the State Board to prevent the exchange of state lands with the government for other lands. The powers granted by the Constitution and laws of the state were reviewed and construed in an able opinion, in which it was held that the state board had no authority *except that specifically given by law* and this was limited by the Constitution, the pact between the government and the state, and the Enabling Act.

The authority of the State Board of Land Commissioners of the State of Colo-

302

rado is limited by Sec. 10 of Art. 9 of that state's constitution, which reads as follows:

"It shall be the duty of the state board of land commissioners to provide for the location, protection, sale or other disposition of all the lands heretofore, or which may hereafter be granted to the state by the general government, under such regulations as may be prescribed by law."

To all intents and purposes, the language is the same as the New Mexico Constitution. It was construed in the case of Walpole v. State Board of Land Com'rs, 62 Colo. 554, 163 P. 848, 850. In that case the court, in discussing the very matter before this court, stated:

"There is nothing in the statute either directly or indirectly authorizing the Board to encumber lands sold with any easement, exception or reservation. It was held in Burke v. Southern Pac. R. Co., 234 U.S. 669, 34 S.Ct. 907, 58 L.Ed. 1527, that when officials authorized to dispose of *lands* do so by a patent containing unauthorized reservations or exceptions, that the land passes unaffected by such exception or reservation. While the Board is a creature of the Constitution it can dispose of state lands *only under such regulations as may be prescribed by law;* and it has and can have no powers or functions other than those bestowed upon it by *legislative enactment.* * * *" (My emphasis)

Webster's International Dictionary defines the word "Dominion" as follows:

"1. Sovereign or supreme authority; the power of governing and controlling; inde-

pendent right of possession, use and control; sovereignty; supremacy. 2. That which is subject to sovereignty or control; Specif: (a) the estate or domain of a feudal lord, (b) territory governed or over which authority is exercised; ............ Law: absolute ownership."

Dominion is defined as complete property or ownership in a thing. Hull v. Langharn, 3 Cal.App. 310, 39 P.2d 478; Bledsoe v. Fitts, 47 Tex.Civ.App. 578, 105 S.W. 1142. I can imagine no more complete power over property than to have "absolute dominion" over it. Even the state has only a qualified dominion over its public lands, which must be exercised through its legislature; but this legislative power is limited materially by the Enabling Act. The Commissioner of Public Lands is the servant of the state and has no *dominion* over its lands, and certainly not "absolute dominion" thereover. He has only such authority (and this authority does not rise to the dignity of "dominion") as the agent of the state, to select, locate, classify, control, lease and dispose of such lands as is delegated to him "under provision of the acts of Congress relating thereto, and such regulation as may be provided by law," and he has no other authority.

The statements made in some of our opinions that the Commissioner has "absolute dominion" over the state's lands is wholly erroneous; and may mislead the public and the Commissioner regarding his authority.

Subject to limitations stated in the Enabling Act and the state Constitution, the state has the same power over its lands as that of any other land owner.

The state Constitution has provided that all rules and regulations regarding the sale, lease and disposition of state lands are legislative functions; and the legislature has enacted such rules and regulations, and as a part thereof has provided forums for settling conflicting claims of individuals involving state lands. These statutes are as follows:

"Sec. 8-808. The commissioner (of public lands) shall have power to cancel any lease, contract or other instrument executed by him which shall have been obtained by fraud or executed through mistake or without authority of law. In such case he shall serve upon the party or parties in interest notice, as prescribed by section 5198 (§ 8-847) to show cause before him, upon a date to be fixed in such notice, why such instrument shall not be canceled in accordance with the rules and regulations of the state land office.

"From the decision rendered by the commissioner upon such hearing an appeal shall lie as provided by this chapter in cases of contest."

"Sec. 8-863. Any person, association of persons, or corporation claiming any right, title, interest or priority of claim, in or to any state lands, covered by any lease, contract, grant or any other instrument executed by the commissioner, shall have the right to initiate a contest before the commissioner who shall have the power to hear and determine same. The commissioner shall prescribe appropriate rules and regulations to govern the practice and procedure of such contents."

"Sec. 8-866. Any person aggrieved by any decision of the commissioner may appeal to the district court of any county wherein any portion of the land as to which any such right, title or interest is in controversy, is situated, by filing with the commissioner, within sixty (60) days after the rendering of any such decision, a motion praying such appeal, and also a bond," etc.

"Sec. 8-867. Thereupon the commissioner shall prepare and forthwith transmit to such district court all papers and copies of all such records as shall be necessary to be considered upon such appeal, together with the decision of the commissioner, and the testimony if so demanded by either contestant or contestee. The clerk of said district court shall docket said appeal and papers as a cause in said district court, and thereafter said appeal so docketed as aforesaid shall be tried de novo and determined in said district court as other causes are therein tried and determined. The party prevailing in the district court shall, after the expiration of the time allowed by law within which a supersedeas may be obtained, file with the commissioner a certified copy of the decision of the district court, to be taxed as costs."

"Sec. 8-868. Appeals from the decision of the district court shall be allowed as in civil cases."

It is provided by Section 3(2) of Article IV of the Constitution of the United States that, "The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States * * *." The only difference in meaning between this provision of the Constitution of the United States and Section 2 of Article XIII of the Constitution of New Mexico, supra, is that the Congress was left the privilege of naming the official who would have charge of the disposition etc., of lands of the United States; whereas the Constitution of New Mexico provides that an official to be designated "The Commissioner of Public Lands" shall perform the same duties regarding the state's lands; such duties to be exercised "under the provisions of the acts of Congress relating thereto and such regulations as may be provided by law."

It has been held by the Federal courts that they will not interfere with the officers of the government while in the discharge of their duties in disposing of the public lands until after title has passed from the United States, with certain exceptions immaterial here. Gonzales v. French, 164 U. S. 338, 17 S.Ct. 102, 41 L.Ed. 458; Gauthier v. Morrison, 232 U.S. 452, 34 S.Ct. 384, 58 L.Ed. 680.

It was stated in U. S. v. Schurz, 102 U. S. 378, 396, 26 L.Ed. 167, that the Constitution had declared that Congress should have the power to dispose of and make all needful rules and regulations respecting the territory and other property of the United States; that Congress had selected the Secretary of the Interior as the representative of the United States in disposing of its public lands, and that: "This court has with a strong hand upheld the doctrine that so long as the legal title to these lands remained in the United States, and the proceedings for acquiring it were as yet in fieri, the courts would not interfere to control the exercise of the power thus vested in that tribunal."

It was later said in Bockfinger v. Foster, 190 U.S. 116, 23 S.Ct. 836, 840, 47 L.Ed. 975, "That the courts will not interfere with the Land Department in its control and disposal of the public lands, under the legislation of Congress, so long as the title in any essential sense remains in the United States."

The legislature of this state, to whom was given the authority to enact rules and regulations for the sale, lease and other disposition of state lands by the Commissioner of Public Lands, has provided a full and complete remedy for anyone to pursue who has been mistreated by another claiming lands to which he is entitled, or by the land department itself, by a contest before the commissioner that may be appealed to the district court and from there to this court in proper cases. Until this remedy is sought and followed the district courts are without jurisdiction to determine the ownership of such leases. Kleinsorge v. Burgbacher, 6 Cal.App. 346, 92 P. 199; Youle v. Thomas, 146 Cal. 537, 80 P. 714.

Regarding the authority of the land department of the United States, see the following cases: Humbird v. Avery, 195 U.S. 480, 25 S.Ct. 123, 49 L.Ed. 286; Wilson v. Elk Coal. Co., 9 Cir., 7 F.2d 112; Reed v. St. Paul, M. & M. R. Co., D. C., 234 F. 123; Central Union Trust Co. of New York v. Martin, D.C., 5 F.2d 116; Marquez v. Frisbie et al., 101 U.S. 473, 25 L.Ed. 800.

I am of the opinion that the district court was without jurisdiction to determine this question in the first instance. It involves the lease of state land, and primarily it is one to be determined by the Commissioner of Public Lands in the manner provided by the rules and regulations enacted by the legislature as authorized by the state Constitution. Of such rules so enacted, those providing for settlement of such claims have been herein copied. Appellee's remedy is by contest before the Commissioner of Public Lands.

I agree that the cause should be reversed and ordered dismissed, but not for the reasons stated in the majority opinion.

BICKLEY, Justice (dissenting).

I agree with the District Court that neither the State of New Mexico nor the Commissioner of Public Lands is an indispensable party to this action.

The relation of indispensable party to a suit must be such that no decree can be entered in the case which will do justice to the parties before the court without injuriously affecting the rights of absent parties. United Shoe Machinery Corp. v.

United States, 258 U.S. 451, 42 S.Ct. 363, 66 L.Ed. 708. See also Mann v. Whitely et al., 36 N.M. 1, 6 P.2d 468.

I am unable to see how the rights of either the state or its representative, the Commissioner of Public Lands, are directly and injuriously affected by the decree in this case. No relief was sought or decreed against the state. It is not bound by the decree and has a free hand as ever to assert any violation of the terms of the lease.

It was recently decided by the Supreme Court of Texas in Petroleum Producers Co. v. Reed, 135 Tex. 386, 144 S.W.2d 540 that:

"In trespass to try title to oil and gas leasehold estate, claimed by defendants under lease executed by the state, the state was not 'indispensable party.' "

The court said:

"As we have seen, the said defendants claim the oil and gas leasehold estate in a portion of said tract of land, under an oil and gas lease executed by the State. In other words, according to the claim of said defendants, whatever rights which accrued to them, under said lease, belong to them and not to the State. It is thus seen that the possession which the plaintiffs challenge is in no sense and in no respect the possession of the State, but is that of the defendants themselves. The very crux of the question which the plaintiffs propose, in their petition, to litigate is whether, as against the defendants in the suit, the plaintiffs have the right to the possession of the oil and gas leasehold estate for which they sue. Undoubtedly, the plaintiffs are privi-

leged to litigate this question with the defendants in the absence of the State. Short v. W. T. Carter & Bro., 133 Tex. 202, 126 S.W.2d 953."

So, I say the crux of the question which the plaintiff, Burguete, sought to litigate in the case at bar is whether as against the *defendant*, Del Curto, the plaintiff had the right to the possession in common with Del Curto of the land in question.

The decree merely declares that the plaintiff have access to the well for his livestock, and grazing privileges on a portion of the leasehold; in other words a limited joint possessory right to a portion of the leasehold estate. Sometimes these leases cover large areas of land and it seems unreasonable to suppose that the lessee and a supposed trespasser may not litigate the right of possession to a portion of land described in the lease without the presence of the state or its representative, the Commissioner of Public Lands. It is not necessary to cite definitions of what is an indispensable party since they abound in the texts. Cases cited by the majority are not controlling in the case at bar.

We recently held in Arnold v. State, 48 N.M. 596, 154 P.2d 257, that since a sovereign state cannot be sued in its own courts without its consent, a suit against the State of New Mexico to have a statute declared unconstitutional was required to be dismissed, where state did not consent to be sued.

The State is in the happy position of being able to remain aloof from lawsuits except of its own choosing and of determining after the event of such actions whether it deems itself injuriously affected by decisions or not, and if it deems it is so, it is free to assert its rights or disclaim them as it may choose. That is the meaning of Arnold v. State.

In 20 Stan. Enc. of Procedure, Parties, p. 889, it is said:

"Where the state should be a party, but by law cannot be sued, it need not be joined."

With the decision in Arnold v. State, supra, and the decision of the majority in the case at bar, it seems that a person claiming an interest in leasehold estate under lease executed by the state is without remedy, a situation which courts strive to avoid. See Locke v. Trustees of New Mexico Reform School, 23 N.M. 487, 169 P. 304.

The findings of fact made by the District Court are sustained by substantial evidence and the legal conclusions based thereon are correct and equitable, and the decree should be affirmed.

I dissent.

### Order on Motion to Recall and Amend Mandate.

#### PER CURIAM.

This cause coming on to be heard upon motion of appellee to recall the mandate herein and amend the same, being in effect a motion to amend the direction given in disposing of said cause in the opinion heretofore filed, and the Court having heard

and considered said motion and the argument of counsel thereon and being sufficiently advised in the premises, it is ordered, Mr. Justice BRICE dissenting in a written opinion, that the mandate herein be and the same is hereby recalled; and that the following language appearing at the end of the opinion on motion for rehearing on file herein, to-wit: "The judgment is reversed with direction that the cause be reinstated upon the docket and that the judgment appealed from be set aside and the cause dismissed." be and the same is hereby set aside and removed from said opinion and the following language and direction substituted therefor, to-wit: "The judgment is reversed and the cause remanded with direction to the trial court to set aside its judgment and for further proceedings consistent with and conformable to the views herein expressed."

BRICE, Justice (dissenting).

After a motion for rehearing had been overruled a mandate was issued requiring the district court to set aside its judgment and to dismiss the appellee's suit. It is now proposed, upon appellee's motion, made long after a rehearing was denied, to recall the mandate upon the asserted ground that the Commissioner of Public Lands has stated orally to counsel that he will enter *his* appearance in the district court if a new trial is had therein, as contemplated by the proposed new mandate.

I am of the opinion that the trial court had no jurisdiction of the cause originally for the reasons stated in my dissenting opinion, and therefore that we could only order the case reversed and dismissed by the district court. This is the first proceeding in this state involving the right to public land or its use, that was not initiated before the Commissioner of Public Lands.

But assuming that the majority are correct in holding that the state is an indispensable party to this suit, and assuming that the court has jurisdiction of the subject matter, the legislature alone may authorize or require it to sue or be sued. I have found no statutory authority, and none has been cited by counsel or the majority, that authorizes the Commissioner of Public Lands to enter his appearance or that of the state in this cause.

The question raised in the district court was not whether the Commissioner of Public Lands was an indispensable party or could be made a party, but whether the state of New Mexico was such party. In the absence of a specific statute authorizing the state to be sued in this character of action, the Commissioner of Public Lands cannot enter his own appearance or that of the state, so that either will be bound by any judgment entered.

We held in State ex rel. Evans v. Field, 27 N.M. 384, 385, 201 P. 1059, 1060, that a suit against the Commissioner of Public Lands as such is a suit against the state. The effect of that decision is that if the state cannot be sued the Commissioner cannot; that the mere entry of his appearance in the case could not affect the rights of the state or authorize a judgment that would

bind it or the commissioner. The rule regarding suits against public officers, and particularly against the Commissioner of Public Lands, is stated in the Evans Case, as follows:

"Where the contract is between the individual and the state, any action founded upon it against defendants who are officers of the state, the object of which is to enforce the specific performance by compelling those things to be done by the defendants which, when done, would constitute a performance by the state, or to forbid the doing of those things which, if done, would be simply breaches of the contract of the state, is in substance a suit against the state itself, and within the prohibition of the Constitution. * * *

"On the other hand, where the law *directs or commands a state officer* to perform an act under given circumstances, which performance is a mere ministerial act, not involving discretion, mandamus will lie to compel the action, notwithstanding performance of the state's contract may incidentally result. In such a case the action is not really upon the contract, but is against the officer as a wrongdoer. He is, under such circumstances, not only violating the rights of the relator, *but is disobeying the express command of his principal, the state*. Injunction will likewise lie to restrain illegal action of a state officer, notwithstanding a breach of the state's contract may thus incidentally be prevented. Upon this subject there are many cases, only a few of which need be noticed."

The majority opinion and the result of this motion are calculated to mislead the trial court and counsel into the belief that if the Commissioner of Public Lands enters his appearance in the case, the objection of appellant that the state is an indispensable party that cannot be sued, is thereby eliminated. In other words, that the entry of the appearance of the Commissioner of Public Lands would authorize a suit against the state, notwithstanding the majority holding that the state is an indispensable party and cannot be sued.

There is no contention that the Commissioner had failed to perform any duty required of him by law, or that he had disobeyed any express command of his principal, required by a legislative Act. Under these circumstances any attempt to settle the controversy in this case by making the Commissioner of Public Lands a party (if the majority opinion is correct) would be a suit against the state (State ex rel. Evans v. Field, supra); and as the opinion of the majority will be the law of the case upon remand, the whole proceeding will effect nothing and prolong litigation that has been settled by the majority opinion.

The motion to recall the mandate should be denied.